The next case for argument is 18-1676, Netlist v. ITC. Let's proceed when you're ready. Good morning. Good morning, your honors. May it please the court. I also have laryngitis, so I apologize. Let him argue. The fundamental issue in this case is an issue of claim construction. We're dealing with patents here that cover memory modules that are able to train their own on-module components. And there's no dispute as to how the accused devices, in this case, function. All the parties agree that the on-module control circuit generates a write command, and then that write command... It generates even if it involves the stuff that's unpacked. This is a packing or unpacking case, right? This is packed together, and then stuff is extracted for certain purposes. And you're saying that that extraction constitutes generating, right? That's correct. We are saying that the term generate, that any transformation or modification is wholly contained within the meaning of generate. So if there's any transformation from what is input to what is output, if there's any modification from what is input to what is output, that would satisfy the meaning of generate, and that's consistent. Okay, so if you have a big box, a gift box for Christmas, and you've got glass in there, so you've packed between the glass certain buffers so that the glass won't break. So when it's delivered and the other person receives it, they extract the glass and they extract the buffers. Is your view that that second step is also generating? Well, it's certainly different than a pass-through in which the package just went down a conveyor belt unopened. So there has been a transformation in that situation. We can, if you...  And the other stuff was just extra stuff to protect the glasses. But you're saying some new product exists once you remove the glasses from the package? Well, I think that we're hyper-focusing on individual data bits. The claim language is data, and the construction is data. So if you're looking myopically at individual training bits and what we want to happen to those, then I think you're looking at the wrong place. What happens in the accused device is that 20 bits of data come in. So the packaging and the data and the training bits, they're all packaged in data. And then that data is transformed. And then you say that by extracting these eight bits, that's the transformation that generates. That's right. 28 bits come in, eight bits go out. So there's been a transformation. I have a question that will make you very sad. But if we actually say both of the other cases should be affirmed, this case just goes away and is dismissed, right? I can't see any claims that are left in this case that aren't covered if we affirm the two earlier cases. So first, that would make me very sad. Yes. But would it be correct? I prefaced. Right. I have a sad question. I think that I have to concede that if finally all of the appeals are finally over with and these patents... I just want to make sure all of the same claims were covered. The ITC proceeding doesn't involve any... I want to make sure factually with you, the ITC proceeding doesn't involve any claims that wouldn't have already been covered by prior invalidations and or these two invalidations. That's correct. But I don't think that necessarily renders this case moot yet until there's been a final resolution as to the outcome at PTAC where all judicial avenues have been exhausted. I don't understand. If we affirm the other two, which invalidate all the claims, why doesn't that render this case moot? Well, it would eventually. I mean, if we are granted certiorari, if we appeal en banc, we still wouldn't have the absolute final mandate for some time. And until that happens, I think this case remains relevant. I think technically we often say cases are mooted when there are companion cases that remove all the claims and they're on the same timeline as the others. So you can always pursue en banc. Go ahead. So I think it's important to understand where the construction of GENERATE comes from. And it comes from a PTAB decision. So the ALJ, in this case, adopted a PTAB's construction of the term GENERATE. And PTAB construed this under the broadest reasonable interpretation. And what was going on at PTAB was that there was an individual data byte being sent through a circuit. And petitioners were trying to expand the meaning of GENERATE to such an extent that intermediate switches would be considered data generation elements just because data was passing through them. And PTAB, therefore, expressly stated that within the scope, actually excluded from the scope of GENERATE, merely pass-throughs. So if you just provide or send or relay a signal, that's not going to be considered GENERATE. However, if during the course of this relaying, there's a transformation of the data signal, the data signal is modified in any way, then that would be considered by PTAB under the broadest reasonable interpretation standard, a generation of that data. And that was the construction that the ALJ, in our case, ultimately adopted. But obviously he construed it differently than you're construing it. What he looked at now was that it's simply unpacking these bits from the other bits that are there to make sure that the data handlers properly receive the previously generated test data. So that's the way he construed the PTAB's meaning of GENERATE, right? Well, it's not finally clear to me how he construed it. We know what he thinks does not count as data generation. Right. But that's at odds with PTAB's understanding of the exact same construction. PTAB agrees with NetList that any difference from data coming in to data coming out is sufficient to show a modification and therefore sufficient to show a generation. Okay. Well, so even if that were correct, even if you were correct on that, where does that lead us? Is your view that he was required to adopt the PTAB's BRI construction as you understand it? Well, he did adopt it. In the ID, he looked to PTAB. He looked to the language of PTAB, then he adopted that. So your argument is not that he should have adopted a different construction, it's that he misinterpreted the construction that he adopted? He subsequently narrowed the scope while improperly looking at the Q's device to say whatever type of transformation we just saw there, because he does admit that it's arguably transformed, and he does admit that it's reassembled, but he says whatever kind of transformation we're talking about there, that doesn't rise to the level of bringing to existence. He didn't tell us what would be a transformation that would rise to the level of bringing something into existence. What was brought into existence in the Q's device? What is your view of brought to existence? Well, what happened in the Q's devices is the data came in and there was a command that issued to the data buffer. And that command was 28 bits long, and it instructed the data buffer to then form ultimately to write into its multipurpose registers to an 8-byte bit of data that came into existence and became at that point ready to write to the DRAMs. And before that happened, the data buffer couldn't write that data to the DRAMs because there would just be a pass-through. If this was just a passive circuit, we would have seen all 28 bits get sent right up to the memory devices, but that's not what happened. Instead, what happened is they brought the 8-bit byte into existence and then divided it and sent it up to the memory to continue the training procedure. I'm going to reserve the remainder of my time. Next one. We've got a split argument here, so we'll run your clock at 8 minutes. Thank you, Your Honor. Good morning, may it please the Court. First off, I would agree with Judge Moore's assessment that this appeal does become moot if you affirm the previous PTAB cases. If you have a previous case from last year, XY case, which is directly on point, we had concurrent PTAB proceedings and affirmed invalidity. So then this appeal would therefore become moot. This is a classic case of the patentee, here netless, first agreeing to a claim construction and then simply disliking the non-infringement outcome that naturally followed from the proper application. Is your friend correct that the ALJ at the ITC conceded that under the board's construction word transformation or whatever, this might be broad enough, but it just doesn't cover it? The ALJ construed generate in accordance with the agreed upon construction of the parties to mean produce, i.e. bring into existence, including by transformation or modification of information. So your friend's relying on the transformation and that something has been transformed here. And I thought he suggested, if I heard him correctly, that the ALJ kind of sort of acknowledged that there was some sort of transformation going on here. It just didn't rise to the level of generate, what was contemplated by the plain language. Do you know what I'm talking about? Yes. That is arguably correct, that ALJ detailed what occurs in the accused products, that external to the accused products themselves, these eight training bits are generated. And again, they are just simply passed through or transmitted through the accused products. Yes, 20 extraneous bits are put on, but they are taken off by the accused products in these same eight bits, unaltered in either value or sequence or written to memory. And the full limitation recites generate data for writing to memory. So that's the key component, what is being generated for written to memory. And it's the same eight training bits. But if transformation is part of the claim construction of generate, I think his argument is, well, you're taking these 28 bits and you're transforming them into eight bits at the end of the day. Is that your understanding? And why wouldn't that satisfy, not necessarily generate, but apparently what appears to be the construction of generate, which includes transformation? Right, but what counsel is doing is reading out the bringing to existence part. It has to be a bringing to existence something different than what was already previously generated. Yes, the agreed upon construction includes transformation modification, but it has to bring into existence through that transformation modification. Here, nothing is being brought into existence. It's the same externally generated eight bits, put on some header and footer bits, take them off, and then write them to memory. The same eight bits unaltered in either value or sequence are then written to memory. I think your glass delivery analogy was spot on. The same glass that's known is put in a box. You put in the tissue paper and take off the tissue paper. It's the same glasses that are delivered. Nothing is transformed or modified. These are the same bits that are written to memory. Therefore, contrary to the agreed upon construction, contrary also to the specification, also contrary to the arguments they made before the PTAB to avoid invalidity where they clearly excluded that generate can mean pass through or transmit or cause. It has to be bringing to existence, including by transformation modification. This is not performed here by the accused products. Was there any other questions from the? Thank you. Good morning, Your Honors, and may it please the Court. I will try to be brief, although I do have full voice today, so any questions you may have. Judge Moore, like my friend just said, what I perceive to be actually a happy question from you as to what happens in the event that you affirm the prior decisions is that this clearly is moot. XY says it becomes moot immediately. It doesn't wait until after the rehearing process or anything else. It operates immediately, and that's the proper disposition of this appeal is to dismiss it on that basis. This is not a claim construction case. This is a straightforward question of substantial evidence to support the construction that everyone agreed upon. I like your Christmas present example. I also like our experts' baggage example. At the end of the day, what brings something into existence? Well, it's not taking it from one place to another. They conceded that in front of the IPR. You have to create it. You have to produce it, and when you take eight bits here and you put eight bits here, they didn't come into existence during that process, or at least that is a reasonable inference for the trier effect that have drawn in this case based on that claim construction, and that's all that's at issue for this Court. If there are no questions, I'll cede you back my time. Thank you, Your Honors. I'd like to provide you with just a couple of sites to the ID in which the ALJ conceded that there was a transformation or arguably a transformation or at least that the data buffers were reassembling the data, and that's in Appendix 71 and Appendix 72. Also, this is a claim construction case, and it's been a claim construction case all along. The ALJ in his ID acknowledged that there was a difference in the understanding of this claim term and the understanding of the scope of his construction in his ID, and he did so at Appendix 60. He noted that Netlist contended that Hynex was limiting the type of transformation to bit flipping, and that's at Appendix 70. He also noted and failed to resolve the dispute with respect to the claim scope during his claim construction analysis and noted that Netlist had an overexpansive interpretation of generate, and that's at Appendix 71. So this is about the meaning of the term generate and, in particular, the meaning of what it means to trade. Yeah, but where does that get us? I mean, yeah, he observed, and it's probably true in a lot of cases, that there's a great amount of internal inconsistency in each party's arguments concerning the claim term generate, but that's at 60, and the analysis, I don't, that didn't seem to infect in any way, shape, or form as far as I can discern the analysis and the conclusions that he reaches later on in the opinion. Well, I think it does. If you look at Appendix 72, he notes that implicit in Complainant's argument is the idea that transformation and modification are specific examples that are wholly contained within the meaning or the scope of produce and bring into existence, which is exactly Netlist's position, and which is exactly in accord with PTAB's position. PTAB said that generate encompasses, so wholly contains, any modification or transformation of data received from another component. So the fact that the ALJ has somehow limited the very construction that he adopted, yet not delineated where and how he's limited that construction, but instead just told us that the accused products don't practice whatever his limitations are, is problematic in, I think, legal error. And then I'd like to discuss PTAB. We never disclaimed our current understanding of generate. Our understanding at PTAB has always been the same. Any signal that's coming through a data, if the data's coming through one end of a device and it's going out the other end and it's unaltered or unmodified, then we don't consider that to be a generation. However, if there's any transformation, there's any modification, then we do consider it a modification, and that is a generation, and that is the same position that PTAB took in what ALJ adopted and what we asked this court to apply to the facts in this case. Thank you, Your Honors. Thank you. We thank both sides, and the case is submitted. The next case for argument is 19-1177, Phillips v. Google.